## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CalPlant I Holdco, LLC, *et al.*,[1] | Case No. 21-11302 (JTD) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) APPROVING ADEQUATE ASSURANCE PROCEDURES, (III) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, AND (IV) GRANTING RELATED RELIEF

The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases hereby file this motion (the "<u>Motion</u>") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief described herein. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Jeffrey N. Wagner, Executive Chairman of the Debtors, in Support of the Chapter 11 Cases and First Day Motions* (the "<u>First Day Declaration</u>"),[2] filed concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned counsel, state as follows:

### RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of interim and final orders (a) approving the Debtors' proposed adequate assurance of payment for future utility services, (b) prohibiting utility companies from altering, refusing, or discontinuing services, (c) approving the Adequate

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number, are as follows: CalPlant I Holdco, LLC (9804) and CalPlant I, LLC (1444). The location of the Debtors' principal place of business and service address is 6101 State Hwy 162, Willows, CA 95988.

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Assurance Procedures (as defined herein), and (d) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing (the "Final Hearing") within thirty (30) days of the Petition Date (the "Interim Period") with respect to the relief requested herein.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

2.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012 (Sleet, C.J.).   This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases (as defined herein) and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested by this Motion are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      Pursuant to Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order or judgment with respect to this Motion if it is determined that this Court lacks jurisdiction under Article III of the United States Constitution to enter such final order or judgment absent consent of the parties.

## BACKGROUND

### A.      Overview

5.      The Debtors have constructed the world's first plant (the "Plant") capable of manufacturing medium density fiberboard ("MDF") from rice straw.  Located in northern California approximately 85 miles north of Sacramento, the Plant converts rice straw—a waste product of rice farming—into high-quality, environmentally friendly, and competitively priced MDF.  While the Plant has been in development for nearly three decades and has been selling

MDF for six months, it is not yet fully operational.  However, the Debtors anticipate that, at full capacity, the Plant will be capable of converting approximately 280,000 tons of post-harvest waste into 140–150) million square feet (based on a normalized thickness of ¾ inch) of MDF on an annual basis.

6.      The Debtors' goal in developing the Plant and its underlying manufacturing processes was born in environmental conservation.  The Plant eliminates more traditional methods of rice straw disposal, which historically involved the incineration of leftover rice straw and currently necessitates the reincorporation of straw into the soil, followed by flooding the field with water and chemicals to hasten decomposition.  The Debtors' method not only reduces methane emissions and water consumption, it also offers rice farmers a less expensive, less labor intensive, and more sustainable means to dispose of waste.  Further, using rice straw as feedstock reduces the need to cut down trees that filter $CO_2$ from the atmosphere.  To date, no other large-scale economically-viable post-harvest uses for rice straw have been developed, so the Plant represents the sole source for disposing of rice straw in an environmentally friendly and economically favorable manner.

7.      While the Plant is not yet operating at full capacity in terms of production output, the Debtors began producing and selling limited quantities of MDF in November 2020 and April 2021, respectively.  During the plant's ramp up, the Debtors have been selling, and will continue to sell, substantially all of the product the Plant has produced.

8.      On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.  The Debtors continue to operate their businesses and manage their

3

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No creditors' committee has been appointed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), nor has a trustee or examiner been appointed in these Chapter 11 Cases.

9.     Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**B.     The Utility Services and Utility Providers**

10.     In the ordinary course of their businesses, the Debtors obtain various utility services, including, among others, electricity, natural gas, propane, waste management (including sewer and trash), internet, telecommunications, and other similar services (collectively, the "Utility Services") from various utility providers (each, a "Utility Provider" and, collectively, the "Utility Providers") to facilitate their business operations. A list of the Utility Providers as of the Petition Date (the "Utility Service List") is attached hereto as **Exhibit C**.[3]

11.     The Utility Services are essential to the Debtors' ongoing operations and restructuring process. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations could be disrupted, potentially endangering the Debtors' employees' health and safety, and impacting the Debtors' ability to complete the commissioning

---

[3]     The Utility Service List is not an admission that any entity is a Utility Provider within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future. Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted one or more Utility Providers. The Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on **Exhibit C**.

of the Plant and improve production capacity and MDF quality. Therefore, it is critical that Utility Services continue uninterrupted during the pendency of these Chapter 11 Cases.

12.    On average, the Debtors pay approximately $864,666 each month for Utility Services. In general, the Debtors have established a good payment history with the Utility Providers and have made payments on a regular and timely basis.

**C.    Proposed Adequate Assurance**

13.    Contemporaneously herewith, the Debtors have filed a motion seeking approval to enter into a debtor-in-possession credit facility (the "Proposed DIP Facility"). The Debtors expect that their cash flows from operations and borrowings under the Proposed DIP Facility will be sufficient to pay all of the Debtors' utility service obligations in accordance with prepetition practice.

14.    Nevertheless, to provide additional adequate assurance of payment, the Debtors propose to deposit, within twenty (20) business days after the Petition Date, $432,333 (the "Adequate Assurance Deposit") into a segregated account[4] (the "Adequate Assurance Deposit Account"), which represents an amount equal to one-half of the Debtors' monthly cost of Utility Services, calculated based on the Debtors' average utility expenses over the prior six-month period.

15.    The Adequate Assurance Deposit will be held by the Debtors in the Adequate Assurance Deposit Account for the duration of these Chapter 11 Cases, and no liens will attach to the Adequate Assurance Deposit or the Adequate Assurance Deposit Account. The Debtors

---

[4]    As set forth in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Maintain Existing Business Forms, and (C) Perform Intercompany Transactions and Pay Prepetition Obligations Related Thereto, (II) Temporarily Suspending the Requirements of Section 345(b), and (III) Granting Related Relief*, the Debtors intend to use the bank account ending in #5809 as the Adequate Assurance Deposit Account.

request that Adequate Assurance Deposit may be adjusted by the Debtors without further order of the Court to account for the termination of services provided by one or more of the Utility Providers, for the addition of Utility Providers, or for other arrangements reached with individual Utility Providers with respect to adequate assurance of payment.

16. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

**D.     Proposed Adequate Assurance Procedures**

17. If any Utility Provider believes that additional assurance is required, and seeks to make a request for additional adequate assurance of future payment (each, an "Additional Assurance Request"), the Debtors request they be required to do so pursuant to the following procedures (the "Adequate Assurance Procedures").

    a. The Debtors will serve a copy of this Motion and the interim order granting the relief requested therein to each Utility Provider following entry of the interim order by the Court.

    b. Subject to paragraphs (e)–(i) herein, the Debtors will deposit the Adequate Assurance Deposit, in the aggregate amount of approximately $432,333.00, into the Adequate Assurance Deposit Account within twenty (20) business days after the Petition Date.

    c. Each Utility Provider shall be entitled to the funds in the Adequate Assurance Account in the amount set forth for such Utility Provider in the column labeled "Adequate Assurance Deposit" on the Utility Service List; provided, however, that a Utility Provider's entitlement to such portion of the Adequate Assurance Deposit shall not limit the amount that a Utility Provider can recover or the extent of a Utility Provider's recourse for postpetition utility services.

    d. If an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Adequate Assurance Deposit Account by giving notice by first class mail and email

to: (i) the Debtors, 6101 State Highway 162 Willows, California 95988 Attn: Jeffrey N. Wagner (jwagner@eurekamdf.com); and (ii) proposed counsel to the Debtors (a) Morrison & Foerster LLP, 250 West 55th Street New York, New York 10019, Attn: Jennifer L. Marines (jmarines@mofo.com), Benjamin Butterfield (bbutterfield@mofo.com), and Miranda K. Russell (mrussell@mofo.com) and (b) Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801-1494, Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya M. Keilson (bkeilson@morrisjames.com) (collectively, the "Notice Parties"). The Debtors shall honor such request within ten (10) business days after the date the request is received by the Debtors, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Provider receives a disbursement from the Adequate Assurance Deposit Account, the Debtors shall replenish the Adequate Assurance Account in the amount disbursed, within twenty (20) business days, except as otherwise set forth herein.

e.    Any Utility Provider desiring additional assurance of payment must serve an Additional Assurance Request on the Notice Parties.

f.    Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which Utility Services are provided and the account numbers for such accounts; (iii) provide evidence that the Debtors have a direct obligation to the Utility Provider; (iv) include a summary of the Debtors' payment history relevant to the affected account(s) for the past six (6) months, including the balance of any security deposits and outstanding balances; (v) certify that the Utility Provider currently is not paid in advance for its services; and (vi) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

g.    Any Utility Provider who does not file an Additional Assurance Request shall be: (i) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (ii) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

h.    Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have thirty (30) calendar days from the receipt of such Additional Assurance Request (collectively, the "Resolution Period") to negotiate with such Utility Provider to resolve such Utility Provider's Additional Assurance Request.

i.      The Debtors, in their discretion, may resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of this Court, and may, in connection with any such agreement, provide the Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and other forms of security, without further order of this Court if the Debtors determine such Additional Assurance Request is reasonable.

j.      If the Debtors determine, in their discretion, that the Additional Assurance Request is not reasonable and are unable to reach a resolution with the Utility Provider during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurance of payment with respect to the particular Utility Provider (the "<u>Determination Hearing</u>") pursuant to section 366(c)(3) of the Bankruptcy Code.

k.      Pending resolution of such dispute at a Determination Hearing, the Utility Provider submitting such Additional Assurance Request shall be prohibited from altering, refusing, or discontinuing service to the Debtors.

18.     The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to administer their chapter 11 estates uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by serving an Additional Assurance Request upon the Notice Parties. The Debtors, in their discretion, may then resolve any Additional Assurance Request by mutual agreement with the Utility Provider and without further order of the Court. If the Additional Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Additional Assurance Request.

19.     The Debtors request that all Utility Providers who do not file an objection to final approval of the relief requested in this Motion or make an Additional Assurance Request pursuant to the Adequate Assurance Procedures be deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code. Absent compliance with the Adequate Assurance Procedures, the Debtors request that the Utility

8

Providers be forbidden from altering, refusing, or discontinuing services or requiring additional assurance of payment other than the Adequate Assurance Deposit.  The relief requested herein is for all Utility Providers providing Utility Services to the Debtors and is not limited to those parties or entities listed on the Utility Services List.

20.     The Adequate Assurance Deposit is not prejudicial to the rights of any Utility Provider and is in the best interests of the Debtors' estates.  Because uninterrupted Utility Services are vital to the continued operation of the Debtors' business and, consequently, to the success of these Chapter 11 Cases, the relief requested herein is necessary and in the best interests of the Debtors' estates and creditors.  Such relief ensures that the Debtors' business operations will not be disrupted and also provides both Utility Providers the Debtors with an orderly, fair procedure for determining Adequate Assurance.

**E.      Subsequent Modifications to Utility Service List.**

21.     The Debtors have made an extensive and good faith effort to identify the Utility Providers and to include them on the Utility Service List.  To the extent the Debtors identify new or additional Utility Providers (each, an "Additional Utility Provider" and, collectively, the "Additional Utility Providers") or discontinue services from existing Utility Providers, the Debtors seek authority to add or remove parties from the Utility Services List.  For any Utility Provider that is subsequently added to the Utility Service List, the Debtors will serve such Utility Provider with a copy of the Court's order regarding Utility Services, including the Adequate Assurance Procedures, and increase the Adequate Assurance Deposit by an amount equal to one-half of the Debtors' monthly cost of Utility Services from the subsequently added Utility Provider, calculated based on the Debtors' average utility expenses over the prior six month period.  The Debtors request that the Court's order regarding Utility Services and the Adequate Assurance Procedures apply to any subsequently identified Utility Provider to the same extent as if the Utility Provider

was listed on the original Utility Service List attached hereto.  For any Utility Provider that is subsequently removed from the Utility List, the Debtors request the authority to decrease the Adequate Assurance Deposit by an amount equal to one-half of the Debtors' monthly cost of Utility Services from the subsequently added Utility Provider, calculated based on the Debtors' average utility expenses over the prior six-month period.

## BASIS FOR RELIEF

### I.     The Proposed Adequate Assurance Is Appropriate.

22.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date.  Section 366(c)(2) requires the debtor to provide "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility provider within thirty (30) days of the Petition Date, or the utility provider may alter, refuse, or discontinue service.  Section 366(c)(1) enumerates what constitutes "assurance of payment."  Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtors' ability to pay.  *See, e.g.*, *Long Isl. Lighting Co. v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, No. 11-CV-1338, 2011 U.S. Dist. LEXIS 131621, at *18 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full[]" (citation omitted)); *In re Caldor, Inc.-NY*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . adequate assurance of payment.  The statute does not require an absolute guarantee of payment."  (internal quotation and citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646 (2d Cir. 1997).

23.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment.  *See Mass. Elec. Co. v.*

10

*Keydata Corp.* (*In re Keydata Corp.*), 12 B.R. 156, 158 (B.A.P. D. Mass. 1981) (citing *In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 82–83 (Bankr. S.D.N.Y. 2002). Courts have recognized that, in determining the requisite level of adequate assurance, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646, 650 (2d Cir. 1997) (citation and internal quotations omitted) (citing *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)); *see also In re Penn Centr. Transp. Co.*, 467 F.2d 100, 103–04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected . . ."). Accordingly, demands by a Utility Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

24.      Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due in the ordinary course provides assurance of the Debtors' payment of their future obligations. Moreover, termination of any Utility Services could result in the Debtors' inability to operate their business to the detriment of all stakeholders. *Cf. In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that without utility service, the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it."). Based upon the foregoing, the Debtors submit that the Proposed Adequate Assurance provides adequate assurance of payment to the Utility Providers.

**II.    The Adequate Assurance Procedures Are Appropriate.**

25.    Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 Bankr. LEXIS 237, at *16-17 (Bankr. E.D. Va. Jan. 14, 2009) ("The plain language of § 366 of the Bankruptcy Code allows the court to adopt the Procedures set forth in the Utility Order."). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* at *19. Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *20. The Utility Providers still may choose, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *20. The Adequate Assurance Procedures, however, avoid a disorganized process whereby each Utility Provider could make a last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *22-23.

26.    Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein. Similar procedures have been approved by courts in this district. *See, e.g.*, *In re Destination Maternity Corp., et al.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 12, 2019) [Docket No. 234] (approving adequate assurance deposit equal to one-half of debtor's average monthly utility expenses); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) [Docket No. 335] (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019)

12

[Docket No. 168] (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) [Docket No. 176] (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 26, 2019) [Docket No. 194] (same).[5]

27.    Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366.   Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

28.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to provide the Adequate Assurance Deposit for the benefit of the Utility Providers and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these Chapter 11 Cases smoothly. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture.   For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.   Accordingly, the Debtors submit that

---

[5]      Due to their voluminous nature, the orders are not attached to this Motion, but are available on request.

they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## RESERVATION OF RIGHTS

29.    The Debtors reserve all rights.  Without limiting the generality of the foregoing, nothing contained herein is or should be construed as: (a) an admission as to the amount of, basis for, or any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

30.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) and waive the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is

necessary to avoid immediate and irreparable harm to the Debtors.   Accordingly, ample cause exists to find the notice requirements of Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen (14) day stay.

## NOTICE

31.    Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel: (i) the U.S. Trustee; (ii) the California Pollution Control Financing Authority; (iii) the trustee under the Senior Indenture and counsel thereto; (iv) the trustee under the Subordinate Indenture and counsel thereto; (v) each of the creditors included on any list filed under Bankruptcy Rule 1007(d); (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the United States Department of Justice for the District of Delaware and the Eastern District of California; (ix) the offices of the attorneys general for the states in which the Debtors operate; (x) the Utility Providers; (xi) the Banks; (xii) any such other party entitled to notice pursuant to Local Rule 9013-1(m); and (xiii) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.   The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

31.    No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

*[Remainder of page intentionally left blank.]*

ny-2234175

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this

Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and

**Exhibit B**, granting the relief requested herein and such other and further relief as the Court deems

appropriate under the circumstances.

Dated: October 5, 2021
Wilmington, Delaware

Respectfully submitted,


/s/ Brya M. Keilson

| **MORRIS JAMES LLP** | **MORRISON & FOERSTER LLP** |
|---|---|
| Eric J. Monzo (DE Bar No. 5214) | Jennifer L. Marines (*pro hac vice to be filed*) |
| Brya M. Keilson (DE Bar No. 4643) | Benjamin Butterfield (*pro hac vice to be filed*) |
| 500 Delaware Avenue, Suite 1500 | Miranda K. Russell (*pro hac vice to be filed*) |
| Wilmington, DE 19801 | 250 West 55th Street |
| Telephone: (302) 888-6800 | New York, New York 10019 |
| Facsimile: (302) 888-6800 | Telephone: (212) 468-8000 |
| emonzo@morrisjames.com | Facsimile: (212) 468-7900 |
| bkeilson@morrisjames.com | jmarines@mofo.com |
|  | bbutterfield@mofo.com |
| *Proposed Counsel to the Debtors and* | mrussell@mofo.com |
| *Debtors in Possession* |  |
|  | *Proposed Counsel to the Debtors and* |
|  | *Debtors in Possession* |